**McDONOLD v. UNITED STATES.**

**No. 14018.**

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1952.

Rehearing Denied Jan. 6, 1953.

Robert C. Whitehead, Jr. and Earl B. Hadlow, Jacksonville, Fla., for appellant.

William S. Walker, Asst. U. S. Atty., Jacksonville, Fla., for appellee.

Before BORAH, STRUM, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Appellant was convicted of making false statements in credit applications and down-payment certificates for the purpose of obtaining various F.H.A. insured loans, in violation of Title 12 U.S.C.A. § 1731a and Title 18 U.S.C.A. § 1010.

The first trial of the appellant was under an indictment containing 19 counts and resulted in a judgment of acquittal as to counts 7, 8, 9, 10, 15, 16, 17 and 18, and a mistrial as to the remaining counts. A second trial resulted in a conviction under the remaining counts 1, 3, 4, 5, 6, 11, 12,

13, 14 and 19 and a judgment of acquittal on count 2. Counts 1 and 3 allege false statements in down-payment certificates offered for the purpose of obtaining a loan on appellant's own home. The remaining counts allege false statements in various credit applications and down-payment certificates made for the purpose of obtaining loans for other home owners. Appellant was sentenced to a two year term of imprisonment.

The material facts reveal that appellant was employed as a salesman by Peninsular Perma-Stone, Inc. at Jacksonville, Florida. In that capacity he would arrange with local property owners to have their homes Perma-Stoned, which process consisted of adding an outer stone surface to the property to be improved. Since the majority of the home owners desiring to Perma-Stone their property were people of limited financial means, it was necessary to finance the desired improvements through F.H.A. insured loans. Appellant would assist the various home owners in their applications for these loans in order to expedite the loans and the completion of the work.

Under Government regulations then in effect, a home owner was required to make a minimum 10% down-payment on the construction cost of any home improvement before he was eligible for an F.H.A. insured loan for the balance. A down-payment certificate to this effect was necessary before the loan could be approved.

Appellant testified in his own behalf and denied making or having knowledge of any false statements in connection with the down-payment certificate involving the loan on his own home. He stated that he made the required down-payment in cash to his employer, George J. Coriell, President of Peninsular Perma-Stone, Inc., and that a record of these payments on the loan involving his home was kept on the books of his company. Appellant's wife corroborated his testimony as to his having made the cash down-payment to Coriell, although their testimony conflicted as to where it was made.[1] Coriell denied receiving any cash down-payments from appellant on this loan, and testified that he and an accountant had gone over the books of the company and that they contained no record of the cash down-payments being received, such testimony being admitted over appellant's objection that the company books were the best evidence.[2]

The alleged false statements of appellant involving the loans for other home owners consisted either in an over-valuation of the owner's interest in the home or an under-valuation of the owner's unpaid debts and obligations. It is without dispute that appellant did offer these various credit applications and certificates for acceptance and that they did in fact contain false statements. Appellant testified that he filled out these applications and certificates accurately according to the information received from the property owners and that they signed the applications and certificates in his presence; that he had no knowledge of the falsity of the statements in any instance until after the loan had been approved. The Government, however, offered testimony by the applicants for the loans tending to show that correct information was given by them to appellant with regard to each of the loans but that appellant later falsified the information for the purpose of getting the loans approved. Although the evidence involving the McCluney loan under counts 4 and 5 tends to show that appellant had no part in negotiating the transaction prior to the presentation of the loans for acceptance, it does reveal that he secured the endorsement of the McCluneys on their loan check, and

---

1. The appellant recalled making the cash down-payment to Coriell at his home in South Jacksonville, while his wife testified it was made in their home at Jacksonville Beach.

2. In overruling appellant's objection the court stated:

    "The objection is overruled. Let me say something to counsel here. If he sought to testify that the books showed a particular thing or showed something, the books would be the best evidence. He stated, as a responsible officer of the corporation that there is no showing in the books that any such action took place."

deposited the money received to his personal bank account, thereafter making the payments on this loan to keep it from becoming delinquent. The McCluneys testified that the 10% down-payment had not been made by them at the time the loan was secured by the appellant, although the down-payment certificate indicated otherwise.

Appellant contends that the Trial Court erred (1) in failing to instruct the jury on the caution to be exercised in relying upon the testimony of the various property owners, alleged to be accomplices with appellant in the violations; (2) in admitting testimony of the witness Coriell to the effect that the cash down-payment on appellant's own home did not appear on the company books; (3) in refusing to grant appellant's motion for judgment of acquittal under counts 4 and 5 involving the McCluney loan; and (4) in admitting much incompetent and irrelevant testimony as to appellant's disposition of the money received from the loans, which it is urged prejudiced him before the jury.

█ █ With reference to appellant's Specification of Error (1), the various property owners, applicants for the loans, would have been accomplices only under a theory that they participated in making false statements. 1 Words & Phrases, page 431. The issue as presented by the testimony was rather which of the two, the appellant or the applicant for the loan, was responsible for the false statements in the application and certificate. We think that the District Judge properly decided that it was more appropriate for him to charge the jury as he did that "in weighing the testimony of a witness you should take into consideration * * * his interest, if any, in the result of the case", than to charge upon the danger of relying upon accomplice testimony. Further, we are not now required to review that issue because the defendant failed to interpose any objection to the Trial Court's action in this regard or to request any written charge as to accomplice testimony. See Perez v. U. S., 9 Cir., 10 F.2d 352; Hall v. U. S., 10 Cir., 78 F.2d 168; cf. Holmgren v. U. S.,

217 U.S. 509, 523–524, 30 S.Ct. 588, 54 L.Ed. 861; United States v. Balodimas, 7 Cir., 177 F.2d 485, 487.

█ The Trial Court was further justified in admitting the testimony of the witness Coriell as to the failure of the company books to reflect any cash down-payment by appellant on his own home. This testimony was introduced not to show any specific transactions or figures which could have been more accurately proved by the books of the company, but merely as proof that no such record of the alleged cash payment actually existed on the books, and the "best evidence rule" did not make this testimony inadmissible. See Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 6 Cir., 137 F.2d 871, 887; Burton v. Driggs, 20 Wall. 125, 87 U.S. 125, 22 L.Ed. 299; 32 C.J.S., Evidence, § 807(d).

█ With reference to specification of error (3), involving the alleged insufficiency of the Government's proof as to counts 4 and 5, the testimony as to appellant having obtained the endorsement of the McCluneys on the loan check and deposited same to his personal bank account, and thereafter making the payments himself in order to keep the loan from becoming delinquent, is sufficient to justify the verdict and sentence under these counts. In any event, since appellant's two year sentence could have been imposed by the Trial Court under any one or all of the 10 counts of the indictment upon which he was convicted, it is well settled that the evidence need not support the verdict under all counts in order to sustain the conviction. See Levi v. United States, 5 Cir., 71 F.2d 353; Bowen v. United States, 8 Cir., 153 F.2d 747; Chapman v. United States, 5 Cir., 10 F.2d 124.

Finally, appellant urges that the testimony of Mrs. Lloyd, Mr. Orin Rogers and Mr. Edson, officials and employees of the bank with whom appellant dealt, as to his handling of the money obtained from the loans was inadmissible as irrelevant, and tended to prejudice the jury against him. Much of this testimony was introduced without objection, and in the few instances

where timely objection was made, the testimony was admissible either in rebuttal of appellant's prior testimony or as competent proof of his intent to violate the regulations.

The judgment is

Affirmed.