UNITED STATES, Appellee

v

FELIX BASSETT GROSSO, Journalist First Class,
U. S. Navy, Appellant

9 USCMA 579, 26 CMR 359

No. 11,314

Decided September 12, 1958

*Lieutenant (jg) Joseph A. Califano, Jr.,* USNR, argued the cause for
Appellant, Accused.
*Lieutenant Colonel Charles H. Beale, Jr.,* USMC, argued the cause for
Appellee, United States.   With him on the brief was *Commander Craig
McKee,* USN.

Opinion of the Court

ROBERT E. QUINN, Chief Judge:
At a rehearing, the accused was con-

victed by special court-martial of three
specifications of larceny.   The conven-

ing authority set aside the findings of guilty of one of the specifications, and a board of review dismissed another, but affirmed the sentence approved below. On this appeal from the affirmance of the remaining findings of guilty, the accused contends he was prejudiced by the admission of certain evidence.

The accused was represented at the trial by the regularly appointed military defense counsel and by a civilian lawyer who is a member of the Bar of the State of California and "licensed to practice before the federal court." This lawyer had also represented the accused at the first trial. The evidence now challenged as inadmissible and prejudicial was admitted without objection. In addition, the effect of the evidence was argued at length by individual defense counsel in a motion for a finding of not guilty.

The evidence was admitted under the following circumstances: Fireman Apprentice Domyan testified that he had purchased two Norelco electric razors from the Navy Exchange—one for his father and one for himself. His razor was taken from him around Thanksgiving Day, 1956. He reported the loss to the Master-at-Arms of Building 57 and bought a replacement from the Exchange. On December 3, a razor was shown to him by Investigator J. McCreery. He identified it as the same as Prosecution Exhibit 2. Investigator McCreery then testified he had recovered the Exhibit from the accused's locker in Building 81; a second Norelco razor was recovered from the accused's locker in a locker club in San Diego. Both razors were shown to Domyan at the same time. He identified as his, the one which had been found in the accused's locker in Building 81. McCreery questioned the accused about the razor. The accused told him he had purchased it at the Navy Exchange "on our base." McCreery's testimony continues as follows:

"Q: How many exchanges are there on our base?
"A: One.
"Q: Did you cause the record at the Exchange to be checked concerning this purchase?
"A: I searched them myself.
"Q: For what period of time did you search the records?
"A: I searched them for a period June first through the time that we recovered the razor.
"Q: Was there any record of Grosso purchasing this razor?
"A: There was none. There were three records there that Domyan had purchased three razors."

At the close of the prosecution's case, individual defense counsel moved for a finding of not guilty. Arguing in regard to the specification alleging the theft of the Norelco razor, he said, in part:

". . . we don't know that Mr. McCreery looked through all the records—we don't know if the man who gave him the records really knew what he was giving to him, we don't know if all the records were complete in the bunch that were given to Mr. McCreery, we don't know a lot of things about that. Now, when the defendant stated that he purchased it in the Navy Exchange that was McCreery's attempt to refute the defendant's explanation that he purchased that Norelco razor in this exchange. Now, we don't have any competent evidence before this court that the defendant says the Navy Exchange, Receiving Station or the Navy Exchange, Naval Station, San Diego."

The substance of defense counsel's argument is now urged as the basis for a conclusion that the evidence of the search of the Exchange records is inadmissible. Appellate defense counsel contend it is "impossible to determine whether the records themselves might have qualified as an exception to the hearsay rule," and, consequently, McCreery's testimony must be considered hearsay.

Two related rules of evidence are actually involved in the accused's claim of error. One concerns entries made in the regular course of business as an exception to the hearsay

rule which excludes evidence not based on the witness's personal knowledge or observation. The other is that the best evidence of the contents of a writing is the writing itself. Neither rule applies, however, when the facts sought to be proved are independent of the writing and are based upon the witness's own knowledge and conduct. The difference is important in a situation of the kind present here. To prove that an entry *exists* in a record is to prove the *contents* of the record. But as Professor Wigmore points out in his monumental work on evidence, proof that a search has been made of a record and that no entry was found to exist involves "in a sense . . . the document's terms, yet is usually and properly regarded as not requiring the books' production for proof." Wigmore, Evidence, 3d ed, § 1244, page 469.[1]

In McDonald v United States, 200 F 2d 502 (CA5th Cir) (1952), the accused had testified that he made a cash payment to the president of a named company. That officer denied receiving the payment. Over defense counsel's objection, he was permitted to testify that he, and an accountant, had searched the company's books and found no record of a cash payment by the accused. The Court of Appeals upheld the trial judge's ruling. It said:

> "The Trial Court was further justified in admitting the testimony of the witness Coriell as to the failure of the company books to reflect any cash down-payment by appellant on his home. This testimony was introduced not to show any specific transactions or figures which could have been more accurately proved by the books of the company, but merely as proof that no such record of the alleged cash payment actually existed on the books, and the 'best evidence rule' did not make this testimony inadmissible. See Pen-Ken Gas &

Oil Corp. v Warfield Natural Gas Co., 6 Cir, 137 F2d 871, 877; Burton v Driggs, 20 Wall 125, 87 US 125, 22 L Ed 299; 32 CJS, Evidence, § 807 (d)." [Ibid, page 504].

In Bussie v United States, 81 Atl 2d 247 (1951), the Municipal Court of Appeals for the District of Columbia sustained a similar ruling by the trial judge. A police lieutenant, who was not the custodian of the records, was permitted to testify that he had searched the records of the police department and could find no record of the issuance of a license to the defendant to carry a gun. In this same vein, the Supreme Court of Georgia held it was error for the trial judge to refuse to allow an attorney to testify that he had examined certain court records and could find no record of a particular event. Peters v Adcock, 196 Ga 118, 26 SE2d 342 (1943). What is emphasized in cases of this kind is that the fact to be proved is the *absence of an entry* which is separate from the *content* of an *entry*. The weight of the testimony of an unsuccessful search depends, of course, upon the capacity of the witness to understand the records he looks at and the thoroughness of his search. However, these are matters which can be inquired into by cross-examination. As the Court said in the *Bussie* case:

> "Undoubtedly it would have been better procedure to produce the official custodian of the records. But the police lieutenant who gave the testimony was liaison officer of the police department attached to the Municipal Court, and we note that the defense did not object to his testimony when it was offered and did not attempt to cross-examine him as to the extent of his knowledge or familiarity with the records. We note also that there was no contention in the trial court and none here that

---

[1] It would appear that individual defense counsel at the trial understood and accepted the distinction. Thus, immediately after the disputed testimony, the witness was asked about his investigation regarding a watch, which was the subject of one of the other specifications. He said that he went to the Navy Exchange jeweler who checked a card in his files. At that point, defense counsel interrupted with an objection. "[W]e have no right to know," he said, "what was on that card unless that man . . . comes in this court and testifies to that effect."

the lieutenant was not in a position to make a complete search of the records and to render an accurate report of what they did or did not contain. Under the circumstances we rule that the evidence of lack of a license was of sufficient probative force to meet the requirements we have stated, and certainly sufficient to take the case to the jury."

Accordingly, we find no error in the ruling admitting the challenged testimony. The decision of the board of review is affirmed.

Judges LATIMER and FERGUSON concur.