UNITED STATES, Appellee,

v.

David L. MAHAN, Private, U.S. Army, Appellant.

No. 30,394.

U. S. Court of Military Appeals.

Feb. 13, 1976.

Captain *John M. Nolan* and *Captain Anthony J. Siano* argued the cause for Appellant, Accused. With them on the brief were *Colonel Alton H. Harvey, Lieutenant Colonel James Kucera, Captain Albert T. Berry,* and *Captain David A. Shaw.*

Captain *John F. Schmutz* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., Major Steven M. Werner, Captain Richard S. Kleager,* and *Captain John F. Depue.*

OPINION OF THE COURT

FLETCHER, Chief Judge:

Appellant challenges the sufficiency of the Government's evidence to establish his alleged absence without authority from November 18, 1969, until January 31, 1974. At trial, the Government offered four items of documentary evidence to prove the AWOL charge. Prosecution Exhibit 1 includes a morning report entry[1] reflecting the accused's departure on November 1, 1969, from 2d Battalion, 3d AIT Brigade, Fort Lewis, Washington, as well as a special order reassigning him to the U.S. Army Overseas Replacement Station, Fort Lewis, Washington, effective November 18, 1969. Prosecution Exhibit 2, which was admitted into evidence over defense objection, is captioned "Certificate of Authentication." Prepared by Major E. C. Bowden, the custodian of personnel records in the Adjutant General's Office, St. Louis, Missouri, the exhibit indicates that "a diligent search of the morning reports of the Overseas Replacement station for the period of 1 November 1969 to 1 December 1969 [was] made and no remarks pertaining to David L. Mahan, 278–46–1910, were found." The two remaining prosecution exhibits established the accused's return to military control on January 31, 1974.

1. A morning report "is the basic record reflecting the official daily status of the reporting organization and each person assigned or attached thereto." Paragraph 1–2, Army Regulation 680–1 (Sept. 11, 1969).

## I

The essential question to be resolved is whether the Government sufficiently established the November 18, 1969, inception date of the absence which would thereby trigger a presumption of continued absence until the proven termination date of January 31, 1974, for as we observed in *United States v. Harris*, 21 U.S.C.M.A. 590, 593, 45 C.M.R. 364, 367 (1972):

> The Government is entitled to a presumption of continued absence only after first establishing a beginning. Contra to the Government's claim, if, in fact, [the appellant] . . . was present on . . . [the alleged inception date], such presence is deemed to be continued until the Government proves he became absent. A contrary rule effectively would shift the burden to the appellant to prove his presence after . . . [the alleged inception date]. The burden of proof of a commencement date is a basic issue of proof which must be established by the Government.

The Government's theory of proof with respect to the inception date of the alleged absence is that the lack of an entry concerning the accused in the morning reports of the Overseas Replacement Station, in and of itself, establishes that he never, in fact, reported for duty and hence was AWOL as of November 18, 1969, the date he was ordered to report. This follows, according to the Government, since it may be presumed that the Overseas Replacement Station complied with pertinent Army regulations which required the organization to make an accession entry in its morning report whenever an individual reported for duty. Thus, applying such a presumption, the absence of an accession entry for the accused establishes, via the presumption, the absence of the accused.

Appellant challenges the Government's utilization of such a presumption [2] observing that, had the Overseas Replacement Station followed the morning report regulations, there would have been an "assigned but not joined" entry as well as an AWOL entry in the morning report.[3] Thus, according to the defense, the absence of entries concerning the accused in the Overseas Replacement Station's morning reports establishes nothing more than the organization's failure to abide by Army regulations and does not give rise to a presumption that the accused was absent without authority as of November 18, 1969.

Relying upon our prior decisions which have sanctioned the use of delayed morning report entries even though other regulatory directives were not followed, the Government suggests that it may couple "negative" evidence[4] with the presumption that

---

2. *See* paragraph 143a (2)(*g*), Manual for Courts-Martial, United States, 1969 (Rev.).

3. Table 3–6 of Army Regulation 680–1 (Sept. 11, 1969) states that:

    If an individual fails to report on his established reporting date and amendatory orders or data authorizing or explaining the absence are not received, action will be taken [under the provisions of] . . . AR 630–10.

    Under paragraph 15a of Army Regulation 630–10 (June 1, 1969), when an individual fails to report to an overseas replacement station, the station commander is required to "immediately communicate directly with the commander of the unit from which the individual was scheduled to depart to determine the individual's status." Subparagraph *d* provides:

    When the individual fails to report on his established reporting date, from an in transit status [which encompasses those directed to report to an Overseas Replacement Station], he will be carried as absent without leave as of the reporting date. If it is later established that the member was not absent without leave, all personnel records entries pertaining to the absence will be neatly lined out, initialed, and dated. A corrective morning report entry will be made in accordance with AR 335–60.

4. Although Prosecution Exhibit 2 was objected to at trial, no serious challenge had been lodged on appeal as to the basic admissibility of negative evidence, that is, evidence which suggests that an event did not occur. Paragraph 143a (2) (*g*), MCM, permits the use of such evidence and essentially adopts the prevailing rule in civilian practice:

    Negative testimony is admissible when a qualified person, who has examined certain records or documents, testifies that he did not find any reference to or entry of a particular item or transaction.

    1 Wharton, Criminal Evidence § 156 (13th ed. 1972). *Accord, United States v. Grosso*, 9 U.S. C.M.A. 579, 26 C.M.R. 359 (1958).

the morning report records were correct as to accession entries even though admittedly incomplete as to absentees. *Cf. United States v. Wilson,* 4 U.S.C.M.A. 3, 15 C.M.R. 3 (1954); *United States v. Phillips,* 3 U.S.C. M.A. 557, 13 C.M.R. 113 (1953). *See also* paragraph 143a(2)(g), Manual for Courts-Martial, United States, 1969 (Rev.).

The Government views the use of such a presumption as a burden-shifting tool to be applied after assessing the relative ease of proof. *Cf. Morrison v. California,* 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1934). Thus, since the prosecution established the accused's receipt of an order to report to the Overseas Replacement Station, the Government suggests that the burden thereby shifted to the defendant to prove his compliance with that order and hence his innocence of the AWOL charge. *Cf. United States v. Kauffman,* 14 U.S.C.M.A. 283, 299, 34 C.M.R. 63, 79 (1963).

## II

Although certain presumptions have been sanctioned in criminal practice, the Supreme Court has made clear that their use must not offend the Due Process Clause of the Constitution. *See, e. g., Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).[5] Writing for the Court in *Leary v. United States,* 395 U.S. 6, 32–36, 89 S.Ct. 1532, 1546–1548, 23 L.Ed.2d 57 (1969) (footnote omitted), Justice Harlan traced the development of such presumptions:

Early decisions of this Court set forth a number of different standards by which to measure the validity of statutory presumptions. However, in *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), the Court singled out one of these tests as controlling, and the *Tot* rule has been adhered to in the two subsequent cases in which the issue has been presented. . . .

The Court, relying upon a prior decision in a civil case, held that the "controlling" test for determining the validity of a statutory presumption was "that there be a rational connection between the fact proved and the fact presumed." 319 U.S. at 467, 63 S.Ct. at 1245. . . .

. . . . .

The upshot of *Tot* [and two subsequent cases] . . . is, we think, that a criminal statutory presumption must be regarded as "irrational" or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.

In holding that the presumption utilized to convict Leary did not satisfy the rational basis test, the Court left open the question "whether a criminal presumption which passes muster when so judged must also satisfy the criminal 'reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use." *Id.* at 36 n. 64, 89 S.Ct. at 1548. However, in *Turner v. United States, supra,* 396 U.S. at 408, 416, 90 S.Ct. 642, the Supreme Court applied both the rational basis test and the "more exacting reasonable-doubt standard" in sanctioning an illegal importation presumption which was triggered by the defendant's mere possession of heroin. Similarly, in *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), the Court tested a common-law inference using both the rational basis and reasonable doubt standards and found the inference constitutionally permissible.

These more recent decisions of the Supreme Court lead us to conclude that continued use of the comparative convenience test urged by the Government to measure the legitimacy of a criminal presumption would not satisfy existing due process standards.[6] Instead, we believe the presump-

---

**5.** While the presumption considered was a statutory one, it is now well settled that all criminal presumptions and inferences must meet due process standards. *Barnes v. United*

*States,* 412 U.S. 837, 844, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

**6.** For an interesting analysis of the Supreme

tion in issue must be tested under the reasonable doubt standard utilized by the Supreme Court in *Turner* and *Barnes*. *See United States v. Black*, 512 F.2d 864 (9th Cir. 1975); *cf. United States v. Tavoularis*, 515 F.2d 1070, 1075 n. 10–11 (2d Cir. 1975).

The Supreme Court has sanctioned no lesser standard in *upholding* a presumption since well before *Leary*. Furthermore, the Court in *Barnes*, 412 U.S. at 843, 93 S.Ct. at 2361, left little maneuvering space for those who would retain the rational basis standard, as the sole litmus test for criminal presumptions:

> What has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process.

In addition, compliance with the reasonable doubt standard is only logical where, as here, a presumption is the crucial evidence used to establish an essential element of proof for such has always been the Government's burden with respect to each ingredient of a criminal offense. *Compare* Ashford & Risinger, *Presumptions, Assumptions and Due Process in Criminal Cases: A Theoretical Overview*, 79 Yale L.J. 165 (1969), *with* Christie & Pye, *Presumptions and Assumptions in the Criminal Law: Another View*, 1970 Duke L.J. 919. Whether the Government's *mode of proof* takes the form of a presumption, an inference, or other circumstantial or direct evidence is immaterial for such is not a justifiable basis for relaxing the Government's *burden of proof*.

Court presumption decisions in a military law context, *see* Hug, *Presumptions and Inferences in Criminal Law*, 56 Mil.L.Rev. 81 (1972).

7. *See United States v. Wilson*, 4 U.S.C.M.A. 3, 15 C.M.R. 3 (1954); *United States v. Phillips*, 3 U.S.C.M.A. 557, 13 C.M.R. 113 (1953).

## III

Applying the reasonable doubt standard, can it be said that the absence of entries concerning the accused in the morning reports of the Overseas Replacement Station indicates "beyond a reasonable doubt" his failure to report for duty on November 18, 1969, as ordered? We think not. While this Court, on occasion, has sanctioned the use of a properly prepared official record even though other regulatory directives were not satisfied,[7] never has the Court permitted the linking of a presumption of regularity with negative evidence which, by definition, derives its sole probative value from the absolute accuracy of an official recordkeeping procedure. While there may be instances in which such a mode of proof is permissible, this is not such a case.

Counsel for the appellant have more than established that the recordkeeping procedure of the Overseas Replacement Station did not satisfy the requirements of Army Regulation 630–10. Indeed, the Government's own evidence indicating the absence of entries concerning the accused is proof positive that the records were not kept in accordance with pertinent Army regulations[8] if, in fact, the accused was absent without authority on November 18, 1969, as alleged.

Because the reliability of the recordation procedure gives negative evidence its substance, once that procedure is shown to be faulty, as was the situation here, the negative evidence based thereon becomes valueless as a means of establishing the ultimate fact sought to be proved. Stated somewhat differently, it becomes meaningless to say that a search of a record failed to produce an entry once it is demonstrated that the personnel who prepared the record failed to

8. Government appellate counsel acknowledge in their brief that, under AR 630–10, the Overseas Replacement Station was duty-bound to make an "assigned but not joined" entry for the accused in the morning report after communicating with the losing unit to verify the accused's status. As attested to by Prosecution Exhibit 2, such an entry was not made.

make all the entries required of them. There simply is no means of determining whether the accused was, in fact, absent or whether the recordkeeper merely failed to perform his duties properly. Under such circumstances, it cannot be said "beyond a reasonable doubt" that the accused was AWOL when a search of the morning report records of the Overseas Replacement Station failed to disclose his name.

## ᐧ IV

As a separate justification for the utilization of negative evidence and the presumption of regularity in this case, Government appellate counsel have noted that it was impossible to create a delayed AWOL entry for the accused in a morning report since the Overseas Replacement Station no longer exists and in view of the requirement that such an entry be reflected in the morning report of the unit from which the servicemember originally absented himself. *See United States v. Brickler*, 11 C.M.R. 675, 678 (AFBR 1953). *See also United States v. Weems*, 45 C.M.R. 538 (ACMR 1972). We are unwilling to relax due process standards governing the use of presumptions in criminal practice merely to afford the Government a means of establishing an otherwise unprovable offense.

No additional evidence concerning the alleged inception date of the absence was offered on the merits at trial. Our belief that, as a matter of law, prosecution exhibits 1 and 2 standing alone do not establish the inception date alleged requires that we affirm only so much of the Army Court of Military Review's decision as finds the appellant guilty of absence without authority on January 31, 1974. *See United States v. Lovall*, 7 U.S.C.M.A. 445, 22 C.M.R. 235 (1956).[9] The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Military Review for reassessment of the sentence.

Senior Judge FERGUSON concurs.

COOK, Judge (concurring in the result):

In *United States v. McNamara*, 7 U.S.C. M.A. 575, 577, 23 C.M.R. 39, 41 (1957), the Court noted that, as every official record "is presumed to speak the truth," it is not reasonably arguable "that one official record is entitled to more or less weight than another." The Government's argument here runs counter to this concept.

The regulations require, as the Government contends, that an entry be made in the morning reports to show that an individual has been added to the unit's rolls. They also require, however, that the unit record the failure of the individual to report as ordered. Thus, the nonexistence of an entry that the individual is absent without authority justifies an inference that he was present for duty; and the absence of an entry showing that the individual joined the organization when he was required to do so justifies an inference that he was absent without authority. Consequently, the certification that no entry as to the accused appears in the official records of the organization gives rise to two conflicting inferences. The Government would have us arbitrarily choose one over the other, but *McNamara* indicates that one inference is no weightier than the other. I conclude, therefore, that the Government failed to meet its burden of establishing beyond a reasonable doubt that the accused was absent without authority on November 18, 1969. For the reasons noted in the majority opinion, I concur in the determination that the record of trial sustains a finding the accused was absent without authority on January 31, 1974, and I join in the directed disposition of the case.

**9.** In view of appellate Government counsel's citation of *United States v. Aaronian*, No. 9474 (ACMR Nov. 8, 1974), *pet. vacated and denied*, 23 U.S.C.M.A. 629 (Docket No. 29,426) (Apr. 30, 1975), as additional support from this Court for this same proposition, we reiterate that our denial of a petition is of *no precedential value* and should not be cited, except as a matter of appellate history, or relied upon as authority.