**UNITED STATES, Appellee,**

v.

**Ralph E. WILSON, Private, U.S. Army, Appellant.**

**No. 29,921.**

U. S. Court of Military Appeals.

Feb. 27, 1976.

326

*Captain Edward E. Shumaker, III,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Victor A. DeFiori, Lieutenant Colonel James Kucera,* and *Captain Gordon R. Denison.*

*Captain Keith H. Jung* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major Steven M. Werner,* and *Captain Joel M. Martel.*

## OPINION OF THE COURT

FERGUSON, Senior Judge:

Appellant claims that the validity of his special court-martial conviction for larceny of certain stereo equipment[1] is compromised by the erroneous admission into evidence by the military judge of a carbon copy[2] of a pawn ticket (prosecution exhibit 3) without the required authentication foundation having been laid therefor. We are of the same mind.

---

1. Additionally, the appellant unsuccessfully contested two charged failures to repair, an allegation of having been disrespectful toward a superior commissioned officer, and a contention of having willfully disobeyed an order from a superior noncommissioned officer, in violation of Articles 86, 89, and 91, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 889, and 891, respectively.

2. Appellant, appropriately, does not contest admissibility of the exhibit on the ground that the carbon copy is not the "best evidence" of the writing available, as a complete carbon copy is included within the definition of "original" for purposes of the best evidence rule. Paragraph 143a(1), Manual for Courts-Martial, United States, 1969 (Rev.).

The only significant probative evidence linking the appellant with the theft in question was the complained of writing.[3] In an effort to gain its admittance as an exception to the hearsay rule,[4] trial counsel set out to authenticate the ticket as a business entry.[5] To do so, the prosecutor called to the witness stand Sergeant Skinner, a military police investigator, who had been on the pawnshop investigation detail for about 4 months at the time of the incident in question. His duties in this connection involved checking the approximately 40 pawnshops in the area of the post for items which had been reported stolen. He testified that he had extensive contact with the particular establishment here involved—the 19th Hole Pawn Shop—having visited it on an average of twice a week for about 2 hours per occasion. He revealed a familiarity with pawnshop procedures generally and he contended that the 19th Hole Pawn Shop followed the described procedures with respect to the completion of pawn tickets and maintenance of records of transactions. However, on cross-examination Investigator Skinner acknowledged that his conclusions about the procedures followed in this particular shop were based solely on his working with its files, because he had not had occasion actually to observe the employees conducting the business and how they did so.

█ A writing made as a record of a transaction is admissible as evidence of that transaction, as an exception to the general hearsay rule,[6]

if made in the regular course of any business and if it was the regular course

of that business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but these circumstances will not affect its admissibility.

However, as the purpose to be served by the hearsay rule is to insure trustworthiness of evidence, the exceptions to that general rule must rise to that level.[7] Hence, for a document offered as proof of the contents thereof to qualify for admission as a business entry a proper foundation must be laid therefor—that is, it must be shown to be credible as being representative of the routine recordation of day-to-day business operations.[8]

█ In military practice, the authentication guidelines to be followed in such cases are found in paragraph 144c, MCM:

A writing purporting to be a memorandum or record of an act, transaction, occurrence, or event may be authenticated as a business entry by proof that it came through a reliable source from a business whose regular course it was to make a memorandum or record of the act, transaction, occurrence, or event, for it may be inferred from this proof that the writing was in fact made as a memorandum or record in the regular course of that business. Also, it is not necessary that a business entry be authenticated by the person who made it or that an authenti-

---

3. The only other evidence at trial involving the appellant was prosecution exhibit 2 and the testimony of Specialist Five Dunlap. Prosecution exhibit 2 is a plain scrap of white paper on which "Wilson" and "16217" are written. However, the prosecution acknowledged that this item was offered not as evidence of the truth of its contents, but only to show what was attached to the stereo when it was discovered in the pawnshop. Specialist Dunlap indicated that he had seen the appellant climb out of a window in the billets carrying a small box, get into a car, and drive away, near the time when the stereo disappeared. Later, however, the defense and the prosecution stipulated that

the window which the appellant exited prior to getting into the car was to his own room.

4. Paragraph 139, MCM.

5. Paragraph 144c, MCM.

6. *Id.*

7. *See generally* 2 Wharton, Criminal Evidence § 265 (13th ed. 1972); McCormick, Evidence § 245 (2d ed. 1972).

8. *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

cating witness have personal knowledge that the entry was correct.

It is clear to us that the witness through whom a party seeks to authenticate a document as a business entry must be one intimately familiar with the conduct of the firm's operation, for no one less familiar could supply the requisite assuredness that the contents of the record may be believed because it was made in the regular course of business.[9] It is not necessarily the status of the witness which will qualify him,[10] though his position may be an indication of his capability to have become intimately familiar with the internal workings of an enterprise.

■ We do not believe that Investigator Skinner possessed the intimate familiarity with the records of the 19th Hole Pawn Shop to be capable of authenticating a particular pawn ticket as having been made in the regular course of that business. His knowledge of pawnshop procedures was of the industry in general, as opposed to addressing that of this particular enterprise.[11] Further, his acquaintance was with this company's files as same may or may not reflect the business' operations, rather than with the actual conduct of its transactions. While there is no requirement that the authenticating witness have personal knowledge of the truth of the entries,[12] he surely must have personal knowledge of the firm's procedures.[13] In this case, Investigator Skinner did not.[14]

■ Neither do we believe that the existence of the "Texas Pawnshop Act,"[15] which requires certain records be kept and that same be maintained in accordance with specified minimum guidelines, can salvage the trial counsel's curiously unusual effort

9. The entry is not authenticated simply by virtue of having been found among the company's files. While paragraph 143*a* (2)(*h* ), MCM, permits certain persons to testify to the effect that records of a business were searched and *no* entry of a specific nature was found, there is no contrary provision for authentication of a discovered entry by custody of same. The fact sought to be proved in the former instance "is the *absence of an entry* which is separate from the *content* of an *entry.*" *United States v. Grosso,* 9 U.S.C.M.A. 579, 581, 26 C.M.R. 359, 361 (1958). However, "[t]o prove that an entry *exists* in a record is to prove the *contents* of the record." *Id.* The latter, of course, unlike the former, is subject to the hearsay rule. *See Hagans v. Ellerman & Bucknall Steamship Co.,* 318 F.2d 563 (3d Cir. 1963); *Bisno v. United States,* 299 F.2d 711 (9th Cir. 1961), *cert. denied,* 370 U.S. 952, 82 S.Ct. 1602, 8 L.Ed.2d 818 (1962); *Schmeller v. United States,* 143 F.2d 544 (6th Cir. 1944).

10. For instance, federal courts have held that even employees of a business may not possess adequate knowledge to authenticate a document in a criminal case when the evidence does not demonstrate a sufficient familiarity with the records in question. *See, e. g., United States v. Rosenstein,* 474 F.2d 705 (2d Cir. 1973).

11. Knowledge of industry practice does not *necessarily* reflect the operational procedure of a particular firm within that industry.

12. Paragraph 144*c,* MCM.

13. General familiarity with a company's *files* does not assure a familiarity—to the requisite degree—of the operational procedures used to *create* those files.

14. Relying, as we are, on application of general evidentiary principles to resolve the issue before us, we in no measure intend to imply approval of trial counsel's use of the law enforcement officer who investigated the charged larceny to lay the necessary foundation for admission of a business record from a *commercial* establishment. Investigator Skinner, upon whose professional work product the instant prosecution principally relied, cannot be said to be wholly disinterested in these proceedings, and the prosecutor's use of him, rather than an employee of the 19th Hole Pawn Shop which is just outside the gates of the military installation involved, is both perplexing and troublesome. Emphasizing that in the area of hearsay it is trustworthiness of the entries which is of critical concern, former Chief Judge Darden opined in *United States v. Evans,* 21 U.S.C.M.A. 579, 582, 45 C.M.R. 353, 356 (1972): "We have not yet accepted that criminal investigators always act with the degree of impartiality that would justify admitting their findings as unexamined evidence." To permit a law enforcement officer on his own testimony to himself authenticate a business record *from a firm wholly unrelated to the police,* ferments an anxiety not entirely dissimilar to the apprehension expressed in *Evans. Cf.* S.Rep. No. 93–1277, 93d Cong., 2d Sess.

15. Vernon's Ann.Civ.St. art. 5069–51.01–.19 (1974).

to authenticate the pawn ticket herein.[16] The fact that a required record is kept and that required information is reflected thereon adds nothing to the inquiry whether a particular record with that sort of information was in fact maintained by a particular establishment as part of its routine business, for that company may well have required *more* of *itself*.[17] If a given record deviated significantly from what *that* business required of itself, then a proffered exhibit which nonetheless complied fully with statutory requirements might well be ruled inadmissible as without the necessary foundation. It is the operation of the particular business in question which is the subject of interest under these circumstances, not the industry norm or the minimum procedural requirements imposed by statute.

The decision of the U.S. Army Court of Military Review is reversed, and the findings of guilty of Additional Charge II and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge FLETCHER concurs.

COOK, Judge (dissenting):

In my opinion, the evidence demonstrates that Sergeant Skinner was sufficiently familiar with the particular methods of operation of the 19th Hole Pawn Shop to qualify him to authenticate the pawnshop ticket offered in evidence.

Sergeant Skinner testified that he was in charge of the pawnshop detail, which had responsibility for checking all pawnshops in the area of Fort Hood, Texas. He had made "regular rounds" of the shops in the area and had personally witnessed pawning transactions. He stated he was "familiar with" the general operation of pawnshops and described a typical transaction, which began with the shopkeeper's examination of the article submitted for pawn, including presentation by the customer of an identification card, which could be a "military ID" or a driver's license, and concluded with the completion of a pawn ticket, in an original and three carbon copies. He had seen "tickets being made out."

At this point in Sergeant Skinner's testimony, defense counsel objected on the ground that "all" of what Skinner had testified to was "irrelevant, unless . . . [he] saw the transaction involving the accused, if there even was a transaction involving the accused." The objection was overruled correctly, I believe. Skinner's testimony had indicated his familiarity with the method of operation and recordkeeping of a particular kind of business in the area. As I shall note presently, proof of his expertise in this regard was important to his later testimony about his acquisition of the pawn ticket in question. That Skinner was not a witness to the "transaction involving the accused" did not preclude his qualification as an expert on pawning procedures in general, or affect his competency to lay a foundation for the admission into evidence of a particular pawn ticket. As the Manual for Courts-Martial notes, and the majority opinion acknowledges, "lack of personal knowledge" of a fact recorded in a business record, even on the part of the maker of the record, does not affect the admissibility of the record. Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 144c.

---

16. Though judicially noticed sua sponte by the Court of Military Review, this statutory provision was not relied upon by the trial judge in making his decision. In fact, Investigator Skinner in his testimony specifically denied the existence of any statewide requirements for pawn tickets. *See United States v. Bethea*, 22 U.S.C. M.A. 223, 46 C.M.R. 223 (1973), which holds that Article 66 of the U.C.M.J. limits the Court of Military Review to the evidence adduced at trial on the guilt or innocence of an accused.

17. It scarcely needs mentioning that the particular pawn ticket in question is not evidence of what the particular pawnshop in question required to be entered on its pawn tickets in the regular course of business, for the very questions presented in such a case as this are whether the ticket came from that shop and, if so, whether its completion was in accordance with the shop's usual procedures. Obviously, therefore, it would be circular logic to use the ticket in question to prove the reliability and trustworthiness of itself.

After the defense objection was overruled, Skinner was examined as to his knowledge of the method of doing business at the 19th Hole Pawn Shop. Because it is crucial to my disagreement with the majority's conclusion that Skinner's knowledge was only of the method of operation "of the industry in general, as opposed to addressing that of this particular enterprise," I set out a crucial portion of his testimony on this point.

TC: Have you seen this procedure [the making out of tickets] being followed at the 19th Hole Pawn Shop?

A: Yes, sir. I am familiar specifically with the 19th Hole.

Q: Have you ever seen them follow any other procedure?

A: No, I have not.

Skinner's testimony indicates that for about a 4-month period prior to the date on the pawnshop record in issue, he visited the 19th Hole Pawn Shop "[o]n the average of about twice a week." He knew that, in completing a pawn ticket, all of the 40-odd pawnshops followed a procedure that was "required" for such establishments in the area. Shop tickets were "printed" in booklets which provided for an original and three copies. The original was given to the person pawning an article; "a hard copy" was retained in the shop in an alphabetical file system; a second copy was kept in a numerical file system; and the "final copy," pink in color, was for the police. The pawn ticket admitted as prosecution exhibit 3 was obtained by Skinner from the manager of the shop, who, in Skinner's presence, extracted it from the police copies in the shop files. Skinner identified that "particular batch of tickets" by its color. The ticket is a printed form with various blanks filled out in handwriting. The exhibit is reproduced below.[1]

It is suggested that defense counsel's cross-examination of Skinner so undermined his direct testimony to the effect he was "familiar specifically" with the business procedures of the 19th Hole Pawn Shop and had never seen them "follow any other procedure" as to require that the whole of his testimony be disregarded as a legal conclusion. The pertinent part of the cross-examination is as follows:

Q: On how many occasions have you see 19th Hole personnel make a pawn shop transaction?

1.

A: It's impossible to give an exact number as the 19th Hole is a very busy shop. It does a lot of business.

Q: While you are there, you are watching what they are doing?

A: Most of my work is connected with their files. I work by their counter, and quite frequently I am asked to move, so they can get at the files themselves, while they are conducting business.

Q: You're not paying attention to exactly how they are conducting their business?

A: No, it would be impossible to watch them while I am conducting my own business.

Q: Can you honestly say that Prosecution Exhibit 3 . . . [sic] how sure are you that that exhibit was made in the regular course of business? Would you say there is a possibility that perhaps it wasn't?

A: My honest opinion is that it was, sir. There is a possibility that it wasn't.

Authentication of a business record requires proof of two circumstances: (1) that the record was made in the regular course of business; and (2) that it was the regular course of business to make that record. I am satisfied that the first circumstance was proved by Sergeant Skinner's testimony. Not only did he testify to the general procedure followed in pawnshops for the recording of a pawn transaction, but he knew "specifically" the procedure followed by the 19th Hole Pawn Shop. His knowledge was founded upon twice-a-week visits to the shop and his observation of actual transactions in the shop. Although not an employee of a business, a person possessed of personal knowledge of the recordkeeping operations of that business, especially if the practices of the business follow those of others in the same business and those general practices are known to the individual, is, in my opinion, competent to testify as to the procedures followed by the business in its recordkeeping. Sergeant Skinner's knowledge of the method of operation of the 19th Hole Pawn Shop was founded on personal knowledge, as distinguished from hearsay.

Skinner conceded "a possibility" that the prosecution exhibit in issue was not made in the regular course of business, but the law does not demand absolute certitude on the part of a witness. Even as to findings of guilty, the requirement of proof for conviction is proof beyond a reasonable doubt, not all doubt. As the Court has recognized, an "honest and cautious witness" can properly refuse "to accord absolute certainty" to an essential part of his testimony, without thereby destroying it. *United States v. Parham*, 14 U.S.C.M.A. 161, 165, 33 C.M.R. 373, 377 (1963); *Davis v. United States*, 78 F.2d 501 (10th Cir. 1935); *accord, United States v. Scott*, 22 U.S.C.M.A. 500, 47 C.M.R. 917 (1973). The principle is particularly applicable here as the issue is not guilt but the predicate for the admission of evidence, a matter that is decided by the trial judge on the basis of the preponderance of the evidence. *United States v. Mewborn*, 17 U.S.C.M.A. 431, 436, 38 C.M.R. 229, 234 (1968). In my opinion, Skinner's concession did not so detract from his testimony indicating the record was made in the regular course of business as to require, as a matter of law, that the trial judge exclude the record from evidence.

Implied in footnote 14 of the majority's opinion is the view that to allow testimony by a law enforcement officer like that of Skinner's is ill advised. The reliance of the majority upon a quotation from the Court's opinion in *United States v. Evans*, 21 U.S.C.M.A. 579, 582, 45 C.M.R. 353, 356 (1972), does not, in my opinion, support the use made of it. Some portions of a report by a law enforcement agency or officer may be inadmissible because expressive of opinion or made for the purpose of prosecution, but all such reports are not inherently untrustworthy because they are made by law enforcement officers. Excluding the inadmissible matter, such reports can qualify as business or official records. *United States v. Miller*, 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974). In any event, we are not dealing here with a police report as to the operation of its own, or some other, business, but with

testimony as to the operation of the 19th Hole Pawn Shop by a person who personally witnessed its operation on numerous occasions. Whether policeman or employee, an eyewitness to the operations of a business is competent to testify as to what he has seen. Skinner's testimony convinces me that the record he produced in court, the printed text of which identifies it with the 19th Hole Pawn Shop and which Skinner said came from the records of the shop and was given to him by its manager, impel me to the conclusion that the record was made in the regular course of business. *United States v. Evans, supra*, 21 U.S.C.M.A. at 581, 45 C.M.R. at 355. *See also United States v. Stone*, 13 U.S.C.M.A. 52, 32 C.M.R. 52 (1962).

As to the requirement that it was the regular course of business of the 19th Hole Pawn Shop to make the record, the quoted extract from Sergeant Skinner's testimony demonstrates that during the many times he visited the shop before the date on the record in issue, he had witnessed preparation of a record for property taken in pawn and he had never "seen them follow any other procedure." I believe the trial judge could infer, as I do, that a procedure undeviatingly followed for over a period of 4 months is probably the required procedure for the business. The inference is strengthened beyond reasonable doubt by Skinner's further testimony that the pink copy for the police department was "required." In footnote 16 of its opinion, the majority indicates that Skinner "denied the existence of any statewide requirements." I do not read Skinner's testimony that way. He was asked whether the police department's copy was required in all pawnshops in the state; the answer was, "I can't say that it is, no. They are required in the pawn shops covered by us alone." It may be that Skinner might not have known that a state statute was the basis for the requirement that the record be kept, but he left no doubt that all the shops in the area, including the 19th Hole Pawn Shop, were obligated by law to report the information on the fourth and final copy of a pawn transaction.

Despite the fact that Texas law does require a record of the kind in issue, a matter which an appellate tribunal can judicially notice, the majority suggests that the 19th Hole Pawn Shop might "well have required *more* of *itself.*" (Emphasis in original.) In my opinion, that possibility is expressly negated by Skinner's testimony and the pawnshop record. But, as I have already noted, the consistent and uniform practice that Skinner observed at the 19th Hole Pawn Shop removes the basis for any speculation that the shop prescribed a course of action for the preparation of a pawn record significantly different from that reflected in the entries of the card in issue. The police department copy, which the manager of the 19th Hole Pawn Shop extracted from the shop's files and turned over to Skinner, shows that every blank associated with the taking of an article in pawn is completely filled in. On its face, therefore, the record demonstrates that nothing more remained to be done in the recordkeeping process for a pawn transaction. *See United States v. Evans, supra*, 21 U.S.C.M.A. at 581, 45 C.M.R. at 355.

I would affirm the decision of the U.S. Army Court of Military Review.