**UNITED STATES, Appellee**

v

**RONALD W. EVANS, Corporal, U. S. Marine Corps,
Appellant**

21 USCMA 579, 45 CMR 353

No. 25,345

August 4, 1972

*Captain F. G. Schonenberg, Jr., USMCR, argued the cause for Appellant, Accused.*

*Captain Donald B. Myers, USMCR, argued the cause for Appellee, United States. With him on the brief were Commander Michael F. Fasanaro, Jr., JAGC, USN, and Lieutenant Colonel L. K. O'Drudy, Jr., USMC.*

## Opinion of the Court

DARDEN, Chief Judge:

This case is here on petition of the accused and certificate of the Judge Advocate General of the Navy, both of which are directed to the correctness of the Court of Military Review's decision that a laboratory report of chemical analysis laws properly received in evidence to establish that a substance found in the accused's possession contained lysergic acid diethylamide.

The accused was apprehended on May 16, 1971, and a search incident to that apprehension disclosed his possession of 300 small white tablets. These were submitted by registered mail to the North Carolina State Bureau of Investigation Laboratory for analysis. A returned written report declared that the tablets had been analyzed and found to contain "the hallucinogenic drug, Lysergic Acid Diethylamide, commonly known as LSD."

This laboratory report was offered in evidence at the trial without the production of the examiner or any authenticating witness. The military judge twice inquired whether defense counsel had any objection to its admissibility and defense counsel twice replied that he did not. Accordingly the report was received and considered as the sole proof that the pills found in the accused's possession contained the prohibited substance.

A majority of the Court of Military Review rejected the accused's contention that the laboratory report was incompetent hearsay and determined that it was properly received in evidence as a business entry, authentication of which had been waived by the defense counsel's failure to object. At this level, accused similarly argues that the report is hearsay and inadmissible because it amounts to a statement of expert opinion and was prepared for the purpose of prosecuting the accused.

Any writing or record made as a memorandum of any act, transaction, occurrence, or event is admissible as evidence of the act, transaction, occurrence, or event "if made in the regular course of any business and if it was the regular course of that business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter." Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 144c. The entry is authenticated by proof "that it came through a reliable source" from the business whose regular course it was to make such entries and, for the purposes of admissibility, the business may be private or governmental. *Ibid.* But business entries must be records of facts, rather than opinions, and must not have been made "principally with a view to prosecution, or other

disciplinary or legal action, as a record of, or during the course of an investigation into, alleged unlawful or improper conduct." *Id.*, paragraph 144*d*.

Ordinarily, the authentication of any writing may be waived by failure to enter an appropriate ▉▉▉▉▉▉ ▉ objection. Manual, supra, paragraph 143*b*; United States v Castilllo, 1 USCMA 352, 3 CMR 86 (1952). Here, defense counsel was twice specifically tendered the opportunity to object to the writing in question and as often refused to do so. We entertain no difficulty therefore in concluding that he waived authentication of the report and that the military judge was entitled to consider it as a genuine document emanating from the North Carolina State Bureau of Investigation Laboratory. But that does not dispose of the problem. We still must determine whether the report qualifies as a business entry and is thus admissible under the pertinent exception to the hearsay rule. Manual, supra, paragraph 144*c*.

Staff Sergeant Thomas M. Grenier testified that, after seizing the tablets from the accused, he forwarded them by registered mail "to the Crime Lab" at the North Carolina State Bureau of Investigation. When the pills were returned by registered mail, their containers bore the initials of Mr. Dismukes, the examiner at the Laboratory. The report in question accompanied them. A chain of custody receipt received in evidence bore Mr. Dismukes's signature.

The report is entitled "LABORATORY REPORT," bears an assigned number, indicates the identity of the examiner as "J. M. Dismukes," and is signed by the Director.

We judicially know that a "crime laboratory" is a place in which scientific methods and prin-▉▉▉▉▉▉ ▉ ciples are applied in the testing and analysis of various items in connection with the detection and prosecution of crimes. Cf. Webster's Third New International Dictionary, 1963 Unabridged edition, page 1260. Obviously, the regular course of the laboratory's business is to record the results of its analysis and make its report to those concerned. From the file number and tenor of the report involved here, we are satisfied that it was made in the regular course of the laboratory's business. We conclude therefore that the exhibit falls within the business entry exception to the hearsay rule.

Two considerations affecting its admissibility nevertheless remain. As noted above, the accused contends that the report is a statement of the examiner's opinion rather than one of fact and that it was prepared for purposes of prosecution. If either contention is sound the document was inadmissible as a business entry. Manual, supra, paragraph 144*d*.

On the question whether the entry is one of fact or opinion, the Manual for Courts-Martial states:

". . . [I]t is often difficult as a practical matter to draw the line between what is opinion and what is fact, and some assertions based on trained observation which, strictly speaking, might be considered statements of opinion so closely approximate statements of fact as to permit the law to place them in the latter category rather than in the former, at least to the extent of allowing a record of them to be admitted in evidence without incurring an appreciable risk of doing an injustice because of lack of opportunity to cross-examine." [Manual, supra, paragraph 144*d*.]

Laboratory reports furnishing the result of chemical analysis fall within the latter category. Such ▉▉▉▉▉▉ ▉ reports are akin to entries regarding a physician's diagnosis of common illnesses or the physical cause of death set forth in a pathologist's report, examples used by the Manual, supra, to illustrate the principle involved. Moreover, we have approved the admissibility of a hospital laboratory report demonstrating the barbiturate level in a person's blood.

**581**

United States v Ayers, 14 USCMA 336, 34 CMR 116 (1964). Laboratory reports on the content of alcohol in an accused's blood also have been held to be admissible as business entries. United States v McLean, 10 CMR 183 (ABR 1953); *contra,* United States v Westcott, 23 CMR 468 (ABR 1957). Other Federal courts have held test reports admissible. Thomas v Hogan, 308 F2d 355 (CA 4th Cir) (1962); United States v Ware, 247 F2d 698 (CA 7th Cir) (1957). We are satisfied that analysis of a substance for the presence of LSD by chemical examination under laboratory conditions is sufficiently factual to escape the opinion limitation on the admission of business entries.

The final consideration is whether the report was prepared for purposes of prosecution. If so, it should have been excluded. The purpose of such a rule is to protect an accused from being convicted on evidence prepared by law enforcement officials whose regular business is the detection of crime. The exception could then engulf the hearsay rule in criminal cases, and the accused would be deprived of his right to cross-examination. Manual, supra, paragraph 144*d*. The important point is the trustworthiness of the entries to establish the accuracy of the information they record. United States v Ware, supra. We have not yet accepted that criminal investigators always act with the degree of impartiality that would justify admitting their findings as unexamined evidence. Palmer v Hoffman, 318 US 109, 113–114, 87 L Ed 645, 63 S Ct 477 (1943), expressed the thought that inattention to this limitation would lead to "Preparation of cases for trial by virtue of being a 'business' or incidental thereto. . . . The probability of trustworthiness of records because they were routine reflections of the day to day operations of a business would be forgotten as the basis of the rule."

We are not persuaded that a chemical examiner's report is made principally for the purpose of prosecution. The report has that ultimate effect if the analysis establishes the forbidden nature of the substance. On the other hand, a negative report eliminates the possibility of prosecution. Just as a pathologist's report is admissible because it is not his function "to determine that the death was caused by any particular person or even that the death was the result of any unlawful conduct," Manual, supra, paragraph 144*d*, so also should the examiner's report be admissible because his duty ends with the examination of the sample submitted and he has no responsibility to determine either that its possession was illegal or that the accused was the guilty party involved. He does no more than seek to establish an intrinsically neutral fact, the identity of the substance itself.

While we agree that the report of a government chemical examiner is sufficiently trustworthy to justify its admission in evidence as a business entry, see United States v Ware, supra, we do not intimate that the accused must forgo the right to attack the report's accuracy. If he wishes to do so, he may have the analyst summoned and "attack the regularity of the test procedure and the competency of the . . . [person] who ran the test. . . . But these factors . . . 'go to the weight of the evidence rather than to (its) initial admissibility.'" Thomas v Hogan, supra, at page 361. In the present case, the accused not only made no effort to attack the analysis of the pills, but twice stated that he had no objection to receipt of the exhibit in evidence. Under the circumstances, we find the laboratory report was properly admitted in evidence.

The decision of the Court of Military Review is affirmed.

Judges QUINN and DUNCAN concur.