UNITED STATES, Appellee,

v.

Specialist Four Ernest A. LONGTIN, SSN 034–42–0251 United States Army, Appellant.

CM 437558.

U. S. Army Court of Military Review.

4 June 1979.

Captain R. Wade Curtis, JAGC, argued the cause of appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Captain Willard E. Nyman, III, JAGC.

Captain Stephen P. Henderson, JAGC, argued the cause for appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Captain Robert D. Newberry, JAGC.

Before JONES, DeFORD and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Judge:

Appellant was convicted, contrary to his pleas, of attempted sale of opium and possession of marijuana and cocaine in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880 and 934. He received an approved sentence that included a bad-conduct discharge, confinement at hard labor for 24 months, forfeiture of all pay and allowances, and reduction to the grade of Private E-1.

The operative facts with which we are concerned are that a confidential informant advised the CID drug suppression team that appellant had opium for sale. The informant made an appointment with the appellant in order that members of the drug suppression team would have an opportunity to purchase illicit drugs. At the appointed time and place McCoy, the informant and Agents Catterton and Davis entered the appellant's barracks room. The appellant was sitting on the floor using a razor blade to separate a white substance on a mirror. The agents introduced themselves by their first names and the appellant got up and removed a plastic bag containing tinfoil wrapped packets from a refrigerator, and stated "Here's what your here for." Appellant represented that the substance was opium and after some negotiation, the agents paid the appellant $375.00 for the purported opium.

Following the sale, the appellant was arrested and a subsequent search of his room revealed marijuana and cocaine. Also found were various items associated with the use and sale of illicit substances.

At trial, the prosecution introduced oral testimony from the agents who purchased the purported opium concerning their purchase and subsequent search of the appellant's room. They further testified to finding the illegal substances, their confiscation of such substances, and their care, control, and transfer of the drug substances. In addition, the CID Evidence Custodian testified as to his receipt of, possession, and forwarding of the alleged illegal substances to the laboratory for identification as well as his receipt of the subject substances from the laboratory in conjunction with the laboratory report.

A complete chain of custody was supported by oral testimony except for the period the exhibits were in the mail to the laboratory, examined at the laboratory, and returned through the mail to the Evidence Custodian. The agents identified, through their initials and date on the packaging, the subject substances as being those seized from the appellant. The laboratory report confirmed the marijuana and cocaine but was inconclusive concerning the purported opium.

On appeal, appellant alleges that his conviction of attempted sale of opium was not established beyond a reasonable doubt in that the substance sold was not opium and consequently appellant asserts that he was entitled to the defense of legal impossibility.

He further alleges that his conviction of possession of cocaine and marijuana have also not been established beyond a reasonable doubt because (a) the Government failed to establish a continuous chain of custody, (b) the laboratory report was not properly authenticated, (c) the laboratory report was hearsay, and was prepared with a view toward prosecution, and, finally, that the laboratory report is incompetent as evidence because the manner of its admission in this

case violates the confrontation clause of the Sixth Amendment to the Constitution of the United States.

## I

■ Article 80 of the Code [1] provides in part that "[An] act done with specific intent to commit an offense under this chapter, amounting to more than a mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense."

Paragraph 159 of the Manual,[2] in explanation of Article 80 set forth above, states in part that "[a]n accused may be guilty of an attempt even though the commission of the intended offense was impossible because of unexpected intervening circumstances or even though the consummation of the intended offense was prevented by a mistake on the part of the accused. The physical impossibility of committing the intended crime does not constitute a defense."

The alleged opium in this case could not be confirmed by the laboratory examination. In an ambivalent comment, the laboratory report (Prosecution Exhibit 7) stated examinations of the gummy substances in Exhibits 5 and 8 (aluminum foil packets containing a brown gummy substance) indicated, but could not confirm the presence of morphine and codine, which are opium alkaloids. In the opinion of the examiner, the substances could be opium. Such an opinion does not establish the presence of opium beyond reasonable doubt.[3]

The foregoing failure in the prosecution's proof is the element appellant now challenges as indicating that he lacked the specific intent to sell opium.[4] Counsel argues such an act was "legally impossible."

We need not draw any artificial distinctions between legal and factual impossibility. In *United States v. Thomas*,[5] our senior appellate Court some years ago rejected the defense of legal impossibility.

Here, every objective manifested act of the appellant indicated that he was selling opium. No defense was interposed that his acts constituted any other act. We believe that a reasonable man in the same circumstances as this appellant might expect the intended criminal consequences to result from the appellant's acts. We, as well as the court members who convicted this appellant, are convinced beyond any reasonable doubt that the appellant possessed the specific intent to sell opium under the factual circumstances set forth here.[6] Accordingly, we find no error.

## II

■ As noted, appellant contends that the Government failed to maintain a continuous chain of custody; that the laboratory report was not properly authenticated, was hearsay, and was prepared with a view to prosecution; and finally that its manner of

1. Uniform Code of Military Justice, 10 U.S.C. § 880.

2. Manual for Courts-Martial, United States, 1969 (Revised edition).

3. It would appear to this author that the laboratory chemist could through the science of qualitative and quantative analysis determine the exact chemical compounds included in the "brown gummy substances".

4. Appellant was also charged alternatively with, and acquitted of, larceny by trick in the selling of the purported opium to the government agents.

5. 13 U.S.C.M.A. 278, 32 C.M.R. 278 (1962).

6. Appellant has requested that this Court reconsider the application of the defense of legal impossibility in light of the rationale set forth in *United States v. Oviedo*, 525 F.2d 881 (5th Cir. 1976). We decline to do so. *Oviedo* is clearly distinguishable from the case at bar. Oviedo testified that he was attempting to perpetrate a fraud upon the purchasers of the alleged heroin, as he knew the substance was not as he had advertised to the potential purchasers. The appellant made no such claim in this case.

In the case before us, the only fact which might tend to negate the objective manifestations of the appellant that he was selling opium was the fact that the laboratory was unable to definitely confirm the presence of opium alkaloids in the alleged contraband substance.

We believe that the evidence presented in this case was more than sufficient to sustain the court members' findings of guilty.

presentation in the case violated the confrontation clause of the Sixth Amendment to the Constitution of the United States.

In *United States v. Evans,*[7] the Court of Military Appeals considered a similar attack upon the admission into evidence of a laboratory report. There it was decided that a laboratory report of a government forensic chemist is sufficiently trustworthy to justify its admission into evidence as a business entry exception to the hearsay rule and such evidence is not prepared with a principal view toward prosecution.[8] The issue of whether the admission of a laboratory report as a business entry exception to the hearsay rule violates the confrontation clause of the Sixth Amendment to the United States Constitution was determined unfavorably to the appellant some years ago in *United States v. Miller,* 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974).

 Turning to the issue of whether the laboratory report was properly authenticated, we note that attached to the document in question was an attesting certificate signed by the commander of the laboratory. The commander certified that he was the custodian of the records of the laboratory and that the foregoing report was prepared in the regular course of business of the laboratory stating the results of analyses performed on the items listed therein.[9] Although the trial judge admitted the report, he did not specifically state for the record the basis under which he admitted the contested document.

Paragraph 143*b* of the Manual[10] concerning authentication of writings provides in part that:

a letter or similar written communication . . . purporting to be a reply from the addressee of a written or other type of message shown to have been com-

municated to that addressee or to have been placed in a reliable channel of communication may be inferred to be genuine.

Furthermore, paragraph 144*c* of the Manual concerning business entries provides in part:

. . . A writing purporting to be a memorandum or record of an act, transaction, occurrence, or event may be authenticated as a business entry by proof that it came through a reliable source from a business whose regular course it was to make a memorandum or record of the act, transaction, occurrence or event, for it may be inferred from this proof that the writing was in fact made as a memorandum or record in the regular course of business. Also it is not necessary that a business entry be authenticated by the person who made it or that an authenticating witness have personal knowledge that the entry was correct.

. . .

Here Special Agent Lambert, the Evidence Custodian, forwarded the physical evidence to the laboratory via the US Mail with a request for examination. In due course, he received the return of the same physical evidence and in response to his request, a laboratory report with the results of analysis and the attesting certificate enumerated above. Accordingly, we conclude that the authenticity of the laboratory report was properly established.[11]

 Finally, there remains the issue of the chain of custody. As we noted above, the prosecution produced oral testimony from the government agents that traced the marijuana, cocaine, and alleged opium from the possession of the appellant through the government agents who handled the evidence until it was placed in the

7. 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972). *Evans* did not address the issue of proper authentication of the laboratory report as that issue was waived by counsel.

8. *Id. See also United States v. Miller,* 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974); *United States v. Burrell,* 5 M.J. 617 (A.C.M.R.1978), *pet. denied* 6 M.J. 105 (C.M.A.1978).

9. See prosecution Exhibit 7.

10. See Footnote 2.

11. *United States v. Wilson,* 1 M.J. 325 (C.M.A. 1976); *United States v. Vietor,* 3 M.J. 952 (N.C. M.R.1977).

United States Mail to the Army laboratory and then its return by mail from the laboratory to the Evidence Custodian and those subsequently handling it until it was placed before the court.

As noted, there remains a gap in the handling of the evidence during the time it was in the mail to and from the laboratory and that period when the evidence was being examined at the lab. Also, the fungible evidence was identified in court as having been the items seized from the appellant and his environs. In *United States v. Mackey,* 7 M.J. 649 (A.C.M.R.1979), and *United States v. Grimm,* 6 M.J. 890 (A.C.M.R.1979), we had occasion to examine virtually identical situations as that before us in this case. There we said that we did not believe that the decision in *United States v. Nault,* 4 M.J. 318 (C.M.A.1978), with regard to the completeness of the chain of custody changed the rule generally accepted in the Federal Courts as set forth in *Gallego v. United States,* 276 F.2d 914 (9th Cir. 1960). In *Gallego* the Court states:

> Before a physical object connected with the commission of a crime may properly be admitted in evidence there must be a showing that such object is in substantially the same condition as when the crime was committed. This determination is to be made by the trial judge. Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it. If upon the consideration of such factors the trial judge is satisfied that in reasonable probability the article has not been changed in important respects, he may permit its introduction in evidence. *United States v. S. B. Penick & Co.,* 2 Cir., 136 F.2d 143,

145. The jury, of course, is free to disregard such evidence upon its finding that the article was not properly identified or that there has been a change in its nature. 276 F.2d at 917.

We believe this is the proper rule to be applied in this case.

■ Although DA Forms 4137 (Evidence/Property Custody documents) were improperly admitted into evidence, *United States v. Neutze,* 7 M.J. 30 (C.M.A.1979); *United States v. Porter,* 7 M.J. 32 (C.M.A. 1979), such evidence was generally cumulative of the oral testimony proffered by the prosecution.[12]

The defense offered no evidence to contradict the showing by the Government that the seized drug substances admitted in evidence remained in substantially the same condition as when seized from the appellant. Accordingly, we find that the trial judge here did not abuse his discretion under the circumstances of this case in admitting the illicit drug exhibits. Accordingly, we find no prejudice.

The remaining assignment of error has been considered and is deemed to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge JONES and Judge LEWIS concur.

---

12. DA Forms 4137 covered all handlers of the questioned evidence. The oral testimony here obviously did not cover those persons who han- dled the evidence while in the mail or at the lab.