UNITED STATES, Appellee,

v.

Lorenzo BROADNAX, Private, U.S. Army, Appellant.

No. 52,700.
SPCM 20956.

U.S. Court of Military Appeals.

March 30, 1987.

For Appellant: *Captain Pamela G. Montgomery* (argued); *Colonel Brooks B. LaGrua, Lieutenant Colonel Paul J. Luedtke, Major Eric T. Franzen, Captain Craig E. Teller* (on brief).

For Appellee: *Captain Karen L. Taylor* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Joseph A. Rehyansky* (on brief); *Colonel Norman G. Cooper* and *Captain Howard G. Cooley.*

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a special court-martial composed of a military judge alone

on August 6, 1984, at Schofield Barracks, Hawaii. Pursuant to his pleas, he was found guilty of willful disobedience of a lawful order and disrespect to a superior noncommissioned officer, in violation of Article 91, Uniform Code of Military Justice, 10 U.S.C. § 891. Contrary to his pleas, he was found guilty of forgery of a check, in violation of Article 123, UCMJ, 10 U.S.C. § 923. He was sentenced to a bad-conduct discharge, 3 months' confinement, and forfeiture of $397.00 pay per month for 3 months. The convening authority approved this sentence, and the Court of Military Review affirmed.

This Court granted review of the following issue raised by appellate defense counsel:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN ADMITTING INTO EVIDENCE A LABORATORY REPORT CONTAINING A HANDWRITING ANALYSIS WITHOUT REQUIRING THE LIVE TESTIMONY OF THE DOCUMENTS EXAMINER AS REQUESTED BY THE DEFENSE.

Considering this issue in light of Mil.R. Evid. 803(8), Manual for Courts-Martial, United States, 1984, and the decision of this Court in *United States v. Vietor*, 10 M.J. 69 (C.M.A.1980), we conclude that prejudicial error occurred.

The evidence in the record concerning the granted issue is not disputed. Private Robert Hubbard, the alleged victim of the forgery offense, testified that in May of 1984 he discovered that a $100.00 check had been written on his account. The check had appellant's name written on the payee line and purported to have Private Hubbard's signature as the payor. Private Hubbard testified that he did not write the check or "authorize anyone else to write" it.

Special Agent William Merrell of the Criminal Investigation Command (CID) testified that he obtained samples of appellant's handwriting and that of Private Hubbard. He forwarded these samples and the forged check to the United States Army Criminal Investigation Laboratory-Pacific. The resulting report, which was admitted at trial, stated that appellant made all entries on the check except for the date. A copy of this report is an appendix to this opinion. The samples used in this handwriting analysis were not introduced as evidence in this court-martial.

Defense counsel at trial objected to admission of this report without the live testimony of the documents examiner who made the report. She asserted that the prosecution had failed to show what documents were analyzed and that her client was being denied his Sixth-Amendment right of confrontation. On questioning by the military judge, she admitted that she made no pretrial request for production of the documents examiner. The military judge denied the motion and apparently admitted the report under the official-records exception to the hearsay rule.[1]

The Government further introduced a written statement made by appellant wherein he absolutely denied any knowledge of the forged check. In this statement, appellant said that he had lost his wallet and military I.D. on April 16, 1984, and the wallet and I.D. were anonymously returned to him by mail on April 26, 1984. Appellant's testimony at trial was in accord with his statement. Appellant's roommate testified that appellant had stated in March or April 1984 that he had lost his I.D. and meal cards and that appellant had on one occasion during that time period borrowed his roommate's meal card. Appellant admitted at trial that he knew Private E–2 (PV2) Hubbard and that he had been in his

1. We note that the military judge's ruling on this matter contains some language which appears in Mil.R.Evid. 803(6), the *"Records of regularly conducted activity"* exception to the hearsay rule. We also note that he referred to the decision of this Court in *United States v. Evans,* 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972), which addressed the "business entry" exception to the hearsay rule found in paragraph 144c, Manual for Courts-Martial, United States, 1969 (Revised edition).

room, but never alone. In rebuttal, the Government offered the testimony of PV2 Donald Newkirk who testified that in April 1984 appellant had asked him to borrow a blank check so that he could "practice check writing." While PV2 Newkirk did not give him a check, he did show appellant "how to write out a check ... on a blank piece of paper."

## ADMISSIBILITY OF LABORATORY REPORT ON HANDWRITING EXEMPLARS

The challenged evidence in this case is a forensic laboratory report containing an opinion from a government documents examiner that appellant authored a forged check. Trial counsel asserted that this evidence was admissible "under [Mil.R.Evid.] 803(a) [sic], Public Records and Reports," and the military judge admitted it "as an official exhibit kept in [the] normal course of business in the United States Government." Defense counsel did not expressly assert that this laboratory report was inadmissible under Mil.R.Evid. 803(8). However, her constitutional objection to admission of this evidence and her improper-foundation objection essentially challenged the trustworthiness of this evidence. Such concerns are similarly embraced in this evidentiary rule, *see generally United States v. Hines*, 23 M.J. 125, 134 (C.M.A.1986). Accordingly, we must first decide whether the military judge properly ruled that this evidence was admissible under Mil.R.Evid. 803(8).

Mil.R.Evid. 803(8) provides:

(8) *Public records and reports.* Records, reports, statements, or data compilations, in any form, of public office[s] or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers and other personnel acting in a law enforcement capacity, or (C) against the government, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness. *Notwithstanding (B), the following are admissible under this paragraph as a record of a fact or event if made by a person within the scope of the person's official duties and those duties included a duty to know or to ascertain through appropriate and trustworthy channels of information the truth of the fact or event and to record such fact or event:* enlistment papers, physical examination papers, outline figure and fingerprint cards, *forensic laboratory reports*, chain of custody documents, morning reports and other personnel accountability documents, service records, officer and enlisted qualification records, records of court-martial convictions, logs, unit personnel diaries, individual equipment records, guard reports, daily strength records of prisoners, and rosters of prisoners.

(Emphasis added.) We note that the portion of the rule beginning with the phrase "Notwithstanding (B)" and which later refers to forensic laboratory reports is not in Fed. R. Evid. 803(8). Moreover, a federal court of appeals has held that evaluative reports by law-enforcement officials offered by the prosecution are not admissible under this rule. *See United States v. Oates*, 560 F.2d 45, 67 (2d Cir.1977). Accordingly, if admission of this evidence is to be held authorized by Mil.R.Evid. 803(8), it must meet the requirements of this additional language.

As a starting point we note that the drafters of this rule of evidence stated their purpose in expressly noting forensic laboratory reports in Mil.R.Evid. 803(8) as follows:

The exclusion in the Federal Rule for "matters observed by police officers" was intended to prevent use of the exception for evaluative reports as the House Committee believed them to be unreliable. Because of the explicit language of the exclusion, normal statutory construction leads to the conclusion that reports

which would be within Federal or Military Rule 803(8) but for the exclusion in (8)(B) are not otherwise admissible under Rule 803(6). Otherwise the inclusion of the limitation would serve virtually no purpose whatsoever. *There is no contradiction between the exclusion in Rule 803(8)(B) and the specific documents made admissible in Rule 803(8) (and Rule 803(6)) because those documents are not matters "observed by police officers and other personnel acting in a law enforcement capacity." To the extent that they might be so considered, the specific language included by the Committee is expressly intended to reject the subdivision (8)(B) limitation.* Note, however, that all forms of evidence not within the specific item listing of the Rule but within the (8)(B) exclusion will be admissible insofar as Rule 803(8) is concerned, whether the evidence is military or civilian in origin. *See* App. 22, Drafters' Analysis at A22–49, Manual, *supra.* Accordingly, this forensic laboratory report was not inadmissible under this rule simply because its maker was a person acting in a law-enforcement capacity. *See United States v. Miller*, 23 U.S.C. M.A. 247, 49 C.M.R. 380 (1974). *Cf.* para. 144*d*, Manual for Courts-Martial, United States, 1969 (Revised edition).

■ Nevertheless, neither the additional language in the military rule nor its analysis provides that such a report is per se admissible simply because it emanates from a forensic laboratory. The additional language also replaced the broad requirement in section (B) that "matters observed" be set forth in the official records or reports. In its place, a more particular requirement was established for the listed items, including the forensic laboratory report, namely that such report set forth "a fact or event ... know[n] or ... ascertain[ed]." [2] Also, "the truth of the fact or event" and its recordation must be "know[n] or ... ascertain[ed] through appropriate and trustworthy channels of information." This last requirement mirrors in an affirmative way the general provision of this rule that a public record should be admitted "unless the sources of information or other circumstances indicate lack of trustworthiness." In summary, the military judge was required to consider the type of information in the report, the method of its acquisition, and the manner in

**2.** The narrow meaning of a fact or event was expressly recognized in paragraph 144*d*, Manual, *supra,* which states:

> d. *Limitations as to the admissibility of official records and business entries.* Official records are admissible in evidence only insofar as they relate to a "fact or event," and the admissibility of business entries is limited to a memorandum or record of "any act, transaction, occurrence, or event." The word "event" may be considered to include the words "act," "transaction," and "occurrence," and to be included within the meaning of the word "fact." Records or entries of "opinion" are not admissible under either the official record or the business entry exception to the hearsay rule. However, it is often difficult as a practical matter to draw the line between what is opinion and what is fact, and some assertions based on trained observation which, strictly speaking, might be considered statements of opinion so closely approximate statements of fact as to permit the law to place them in the latter category rather than in the former, at least to the extent of allowing a record of them to be admitted in evidence without incurring an appreciable risk of doing an injustice because of lack of opportunity to cross-ex-

amine. For example, if otherwise admissible as official records or business entries, entries in a physician's report setting forth his diagnosis of an illness of a kind which can readily be diagnosed by the medical profession, and in an autopsy report setting forth the opinion of the pathologist as to the physical cause of death, as when he concludes that death was caused by a certain disease, by a certain poison, or by a gunshot wound, are admissible in evidence to prove the illness and the physical cause of death, respectively. On the other hand, entries in a report of a board of medical officers (psychiatrists) as to the mental condition of a certain person are not admissible to prove that mental condition, for a diagnosis of a person's mental condition involves opinion to such a degree as to require that those making the diagnosis be subject to cross-examination. See 122*c.*

A similar but not identical issue exists with respect to Fed.R.Evid. 803(8)(C). *See* cases cited in *Rainey v. Beech Aircraft Corp.,* 784 F.2d 1523, 1527–28 (11th Cir.1986), *op. vacated,* 791 F.2d 833 (11th Cir.1986). *Cf. Perrin v. Anderson,* 784 F.2d 1040, 1046–47 (10th Cir. 1986).

which it was presented before admitting this specific report. *See* Mil.R.Evid. 803(6). *Cf.* para. 144c, 1969 Manual, *supra.*

■ The forensic laboratory report in this case set forth the documents examiner's opinion that appellant "authored the comparable questioned entries on" the forged check. We cannot equate what substantially amounts to an opinion of guilt with the factual type of result concerning the identity of an unknown substance which is produced by chemical analysis. *See United States v. Evans*, 21 U.S.C.M.A. 579, 581–82, 45 C.M.R. 353, 355–56 (1972). Moreover, although scientific or professional methods may be employed to some degree in reaching such an opinion, the element of subjectivity involved is greater than that in chemical analysis. *See generally* P. Giannelli and E. Imwinkelried, *Scientific Evidence* § 21–2(B) at 806 (1986). *See also McCormick's Handbook of the Law of Evidence* § 205 at 500–02 (E. Cleary 2d Ed.1972); 17 Am.Jur. *Proof of Facts Questioned Documents* § 36 at 536–38 (1966). Finally, the exemplars involved in the above analysis and noted in the report were not produced at trial. Omission of these documents eliminated a critical basis for the military judge to assess the trustworthiness of the bare assertion of authorship contained in the laboratory report. *See United States v. McFerren*, 6 U.S.C.M.A. 486, 491, 20 C.M.R. 202, 207 (1955). *See generally* 4 *Weinstein's Evidence* § 803(8)[03] at 803–206 (1979).

Of course, it is possible that the drafters of Mil.R.Evid. 803(8) intended this exception to the hearsay rule to be broader than our prior case law allows. Such an exception to the hearsay rule would also exceed Fed.R.Evid. 803(8). *See United States v.*

*Oates, supra.* Accordingly, this recent expansion of this traditional hearsay exception could not reasonably be considered "firmly rooted," and the absence of the above guarantees of trustworthiness could be properly considered on the Sixth-Amendment-Confrontation question. *See Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). In either event, the result is the same: The challenged report was inadmissible.[3]

## WAIVER BY THE DEFENSE

■ The Government, relying on the various opinions of the judges of this Court in *United States v. Vietor*, 10 M.J. 69, argues that appellant waived his Sixth-Amendment-Confrontation rights by failing to request the questioned documents examiner prior to trial. That case, however, involved chemical analysis, not handwriting analysis. As we have explained above, the instant case cannot be resolved on *Vietor*, and therefore there was no waiver in this case. Moreover, each judge's opinion was predicated on previous decisions of this Court narrowly applying paragraph 144, 1969 Manual, *supra*, to forensic-laboratory reports containing chemical-test results.[4] If Mil.R.Evid. 803(8) or 803(6), its evidentiary successors, are to be interpreted in a far broader manner, the waiver rationale of *Vietor* must be clarified.

The bottom line of the decision in *United States v. Vietor*, *supra* at 78, was that the defense must attempt to discover the expected testimony of the government chemist and affirmatively request his presence prior to trial. *See United States v. Porter*, 12 M.J. 129, 132 (C.M.A.1981). This burden, although minimal, was imposed on the

---

**3.** It is also possible that the military judge relied on Mil.R.Evid. 803(6), which expressly includes *opinions contained in forensic—laboratory reports*. We note, however, that it also does not per se sanction admission of such evidence without regard to the nature of the opinion, the manner in which it was reached, and the circumstances in which it was presented. *See Forward Communications Corp. v. United States*, 608 F.2d 485, 510–11, 221 Ct.Cl. 582 (1979); S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual* 832, 919 (4th ed. 1986). In any

event, these matters affecting trustworthiness may properly be considered in resolving the Sixth-Amendment-Confrontation questions raised by admission of this hearsay evidence form.

**4.** *United States v. Strangstalien*, 7 M.J. 225 (C.M.A.1979); *United States v. Miller*, 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974); *United States v. Evans, supra.*

defense in light of the factual nature of results of chemical analysis and to avoid unreasonable harassment and undue pressure on the Government resulting solely from the geographic locations of the forensic laboratories.

■ Where the opinion testimony contained in such a report is more subjective in nature, such as in the instant case involving handwriting analysis, the Government must notify the defense prior to trial of its intent to introduce such evidence so that the Government can secure the presence of the expert at trial if requested by the defense. Only then can a failure to respond by defense counsel be construed as a waiver of this witness' presence. This rule will allow an accused to assert his or her Sixth-Amendment rights with regard to laboratory reports involving subjective opinions and yet allow a worldwide military justice system to effectively and efficiently function.

■ We conclude that appellant was materially prejudiced by the judge's ruling and that the conviction for forgery cannot stand.

The decision of the United States Army Court of Military Review is reversed as to Charge III, specification 1 thereunder, and the sentence. The findings of guilty thereon are set aside and that specification and Charge are dismissed. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for reassessment of the sentence based on the remaining findings of guilty.

Chief Judge EVERETT concurs.

## APPENDIX

| LABORATORY REPORT<br>*CID Regulation 195-20* | | 26 June 1984 | |
|---|---|---|---|
| **PREPARING LABORATORY**<br>United States Army Criminal<br>Investigation Laboratory -<br>Pacific<br>APO San Francisco 96343-0086 | **CONTRIBUTOR**<br>Commander<br>Hawaii District<br>Sixth Region, USACIDC<br>Schofield Barracks, HI 96857 | **PAGE** 1 **OF** 1 **PAGES** | |
| | | **LABORATORY CASE NUMBER**<br>84-CID331-00673-D-FP | |
| | | **CONTIBUTOR CASE NUMBER**<br>0321-84-CID108-08056 | |

**SUSPECT(S)**

BROADNAX, Lorenzo (NMN)

**EVIDENCE EXAMINED**                                                                                            tm

1           Personal Check #111.

2(1-32)     Known writing of HUBBARD.

3(1-29)     Known writing of BROADNAX.

4           Record finger and palm prints of BROADNAX.

Note:  Exhibits listed in this report were received in a sealed container with the
       seal intact.  No signs of tampering with the sealed container were apparent.

FINDINGS:

(Document Division Report):  With the exception of the "DATE" entry, BROADNAX
authored the comparable questioned entries on Exhibit 1.

                                        BILLY R. TRAPP
                                        Questioned Document Examiner
                                        7 June 1984

(Fingerprint Division Report):

1.  Examination of Exhibit 1 revealed one latent fingerprint, one latent partial
    print and one latent partial palmprint which are suitable for identification.

2.  Comparison of the above listed latent prints with the record prints of Exhibit
    4 did not reveal any matching impressions.

3.  Photographic copies of the above listed latent prints are retained in the files
    of this laboratory for comparison with any additional record major case prints
    that may be submitted.

                                        SIDNEY C. YARBROUGH
                                        Latent Print Examiner
                                        26 June 1984

DIST:  6 - Contr; 1 - File

CID FORM 72
 JUN EXHIBIT 8                      OFFICIAL USE
                                         ONLY

COX, Judge (concurring):

In order to reconcile this decision with other holdings of this Court dealing with admissibility of forensic-laboratory reports, it is necessary to discuss the interaction of the evidentiary rules with the right of an accused to confront the witnesses against him at his trial or to compel the attendance of witnesses. *See* S.Saltzburg, L.Schinasi, D.Schlueter, *Military Rules of Evidence Manual* 647, 648 (2d ed. 1986). The power to promulgate rules of evidence means, by definition, that the traditional rules may be modified. Whatever else may be said of the Military Rules of Evidence, it cannot be

doubted that the drafters specifically intended to, and did, include "forensic laboratory reports" within the *"Records of regularly conducted activity "* and *"Public records and reports "* exceptions to the hearsay rule. Mil.R.Evid. 803(6) and (8), Manual for Courts-Martial, United States, 1984.

Notwithstanding evidentiary rules, an accused has a constitutional right to confront the witnesses against him at trial. U.S. Const. amend. VI. This right has not been interpreted as being absolute, however. Indeed, it is said that, "where the evidence falls within a firmly rooted hearsay exception," an inference of "[r]eliability ... [may be drawn] without more," and "certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' " *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). In the case of such "firmly rooted" exceptions, the availability of the declarant is immaterial. *United States v. Hines,* 23 M.J. 125, 128–29 n. 6 (C.M.A.1986). However, to the extent that the traditional common-law hearsay exceptions have been altered, as here, there can be no claim that the new exception is "firmly rooted." *Cf. United States v. Groves,* 23 M.J. 374 (C.M.A.1987).

Out-of-court statements may also be constitutionally admitted against an accused when: (A) the declarant is unavailable; and (B) the evidence bears such "indicia of reliability" as to be a veritable substitute for the preferred face-to-face confrontation. *See United States v. Hines, supra* at 130, 136, 137. The laboratory results here fail the "indicia of reliability" prong since, as pointed out by Judge Sullivan, evaluating handwriting exemplars is more subjective than many other scientific tests. In addition, the Government did not establish that the expert was unavailable. *Cf. Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

In the area of chemical analysis of drugs, however, we have admittedly taken a more pragmatic approach to the Government's initial duty to demonstrate the unavailability of the expert before being permitted to introduce laboratory results. In short, the fact that the witness may not be available is not a prerequisite. *See, e.g., United States v. Vietor,* 10 M.J. 69 (C.M.A.1980); *United States v. Strangstalien,* 7 M.J. 225 (C.M.A.1979). Unfortunately, the judges were not able to settle upon a common theory in these cases. I extract from them a variety of factors to explain the different approaches. First, unlike the expert's conclusion here, the chemical identification of an unknown substance is essentially neutral and nonaccusatory. The technician is simply seeking to identify a substance, rather than to implicate a particular person. Second, as indicated, the analytical process involves little room for subjectivity. Third, experience has shown that objections to admitting laboratory results based on the technician's absence at trial are as apt to be tactical ploys as they are to be serious efforts to confront the witness. Such tactics are designed to capitalize on the practical impediments to routinely providing chemist-witnesses throughout the worldwide court-martial jurisdiction, a logistical problem unique to the military. Fourth, the *quid pro quo* for the accused is that we have adopted—in the area of drug analysis—Professor Westen's thesis that the Compulsory-Process clause subsumes the Confrontation Clause. *See* Westen, *The Compulsory Process Clause,* 73 Mich. L.Rev. 71, 183–84 (1974); *United States v. Vietor, supra* at 75–76 (Everett, C.J., concurring in the result). Thus, the accused who actually wants to confront the expert can—just as he can with any other witness—simply by making the minimal showing that the testimony is "relevant and necessary." R.C.M. 703(b)(1), Manual, *supra.*

Handwriting analyses do not warrant this special treatment; thus, appellant was entitled to confront his accuser and permit the factfinder to make his own judgment as to the validity of the analysis. Moreover, the rules of evidence applicable to courts-martial prior to September 1, 1980, specifi-

cally recognized that even laymen could be competent to opine on the genuineness or lack thereof in handwriting. Para. 143*b* (1), Manual for Courts-Martial, United States, 1969 (Revised edition). The current Military Rules of Evidence do not purport to extinguish that capability. *See* Mil.R.Evid. 701 and App. 22, Analysis of the Military Rules of Evidence, 1984 Manual, *supra* at A22–45. Therefore, I believe appellant was entitled to have the factfinder personally examine the exemplars used by the expert to form his opinion so that the factfinder would be better able to evaluate the weight that should be accorded the expert's conclusion. Receiving evidence in the form of a laboratory report that would otherwise be subject to the rigors of cross-examination, Mil.R.Evid. 701–05, risks lending it an aura of scientific infallibility. As the expert's opinion was by far the most significant item linking appellant to the charge, I agree that prejudice is apparent from the erroneous admission of the exhibit.